THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| EDGAR IVAN DIAZ FLORES,<br><br>Petitioner,<br><br>v.<br><br>RUBEN LEYVA, Acting Field Office Director, Salt Lake City Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE/ERO); BRIAN HENKE Field Office Director for Las Vegas/Salt Lake City; MARKWAYNE MULLIN, Secretary United States Department of Homeland Security; TODD BLANCHE, Acting U.S. Attorney General,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; ORDERING RELEASE AND REPORTS**<br><br>Case No. 4:26-cv-00060-DN-PK<br><br>District Judge David Nuffer |

Petitioner Edgar Ivan Diaz Flores ("Mr. Diaz") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241(a), alleging that he is being unlawfully confined in violation of the Constitution and laws of the United States.[1] Mr. Diaz challenges his May 19, 2026, arrest and subsequent detention by U.S. Immigration and Customs Enforcement ("ICE").[2] Mr. Diaz is a noncitizen who presented himself at the United States' southern border on May 6, 2022, as an

---

[1] Petition for Writ of Habeas Corpus ("Petition"), docket no. 1, filed May 22, 2026.

[2] *Id.* at 3, 9–13, 18; *see also* Petitioner's Reply to Respondent's Response to Order to Show Cause ("Reply") 2, docket no. 11, filed June 4, 2026.

asylum seeker.[3] He was detained and "paroled pursuant to Section 212(d)(5) of the immigration and Nationality Act."[4]

On May 19, 2026, Mr. Diaz was travelling in a vehicle with two others when he was approached, arrested, and detained by ICE agents in St. George, Utah, at the direction of ICE/ERO Acting Field Office Director Ruben Leyva, Field Office Director Brian Henke, Secretary of Homeland Security Markwayne Mullin, and U.S. Attorney General Todd Blanche (collectively, "Respondents").[5] Mr. Diaz was transported to the ICE Enforcement and Removal Operations office in St. George, for processing and then transferred into the Purgatory Correctional Facility in Hurricane, Utah.[6]

Respondents maintain that the detention and removal of Mr. Diaz is authorized under 8 U.S.C. § 1225(b)(2)(A) because "Mr. Diaz's parole from custody expired on September 28, 2022," and "he did not voluntarily return to the custody from which he was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A)."[7]

Respondents never provided any documentation to inform Mr. Diaz before his arrest that his parole had expired or that he must "voluntarily return to custody."[8] Without commenting on the termination of his parole, U.S. Citizenship and Immigration Services ("USCIS") processed Mr. Diaz's documentation at his October 2, 2023, biometrics appointment related to his pending

---

[3] Petition at 2, ¶¶ 2–3; *see also* Respondents' Response to Order to Show Cause Why Petition for Writ of Habeas Corpus Should Not Be Granted ("Response") at 2, docket no. 9, filed June 2, 2026; *see also* Exhibit 1 to Response, U.S. Department of Homeland Security I-214 Form, Record of Deportable/Inadmissible Alien ("DHS Record"), docket no. 9-1, filed June 2, 2026.

[4] Notice to Appear, Exhibit 2 to Response, docket no. 9-2; *see also* Petition at 2, ¶ 2; Response at 2–3.

[5] Petition at 1–3, 7, ¶¶ 9, 34–37.

[6] *Id.* at 3, ¶¶ 9–11.

[7] Response at 2–3, 9–13.

[8] *See generally id.* at 3 (citing to DHS Record at 3, Exhibit 1 to Response) (noting that Respondent's cite to this internal record in support of the parole termination date, but no other documentation is given to demonstrate Mr. Diaz was aware of this date).

Application for Asylum and for Withholding of Removal ("Asylum Application").[9] Mr. Diaz's

Asylum Application remains pending.[10] And Mr. Diaz's arrest on May 19, 2026, was not

pursuant to a warrant.[11]

After reviewing the Petition and the Response and Reply, which followed entry of an

Order to Show Cause,[12] and for the reasons stated below, Mr. Diaz's Petition is GRANTED. Mr.

Diaz is ordered released immediately from detention.

**Contents**

1  BACKGROUND.................................................................................................................. 4
2  LEGAL STANDARD......................................................................................................... 7
3  DISCUSSION .................................................................................................................... 7
   3.1    Section 1226(a) Governs Mr. Diaz's Detention ..................................................... 10
          3.1.1   DHS Authorized Mr. Diaz's Entry into the United States Through Its
                  Limited Parole Exception to Mandatory Detention .................................... 12
          3.1.1   Section 1225 Applies Only to Noncitizens Who Are Actively "Seeking
                  Admission" ................................................................................................. 13
          3.1.2   A Paroled Noncitizen Residing in the United States Is Not Subject to
                  Mandatory Detention Under § 1225(b)(2)................................................. 16
   3.2    Respondents Did Not Comply with the Applicable Statutory and Regulatory
          Procedures Terminating Mr. Diaz's Parole ............................................................ 19
   3.3    Mr. Diaz's Liberty Interests Have Been Violated .................................................. 23
          3.3.1   The Private Interest Affected...................................................................... 24
          3.3.2   The Risk of Erroneous Deprivation ........................................................... 26
          3.3.3   The Government's Interest .......................................................................... 26
   3.4    Respondents Have No Authority to Continue Detaining Mr. Diaz ...................... 27
4  ORDER............................................................................................................................. 29

---

[9] Petition at 2, ¶¶ 3, 6, Exhibit 3, USCIS Form I-797C, Notice of Action, docket no. 1-3 ("USCIS Notice of Action").

[10] Petition at 2, ¶¶ 3, 6, Exhibit 3 to Petition, USCIS Notice of Action; *see* Petitioner's Supplemental Memorandum Regarding June 9, 2026 Master Calendar Hearing ("Petitioner's Report of June 9, 2026 Hearing"), docket no. 13, filed June 15, 2026; *see also* Federal Respondents' Supplemental Memorandum ("Respondents Report of June 9, 2026 Hearing"), docket no. 14, filed June 16, 2026.

[11] Petition at 3, ¶¶ 8–11; *see also* DHS Record at 3.

[12] Memorandum Decision and Order to Show Cause and Order Staying Transfer During Pendency of Petition ("Order to Show Cause"), docket no. 4, filed May 26, 2026.

## 1   BACKGROUND

Mr. Diaz was travelling in a vehicle with two other people when they were pulled over by ICE agents on May 19, 2026.[13] No explanation for why the vehicle was stopped has been given. Mr. Diaz was the only occupant of the vehicle that was detained.[14] ICE agents arrested Mr. Diaz for allegedly violating the Immigration and Nationality Act ("INA") when "he did not voluntarily return to the custody from which he was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A)."[15] The arrest was made despite Mr. Diaz's pending Asylum Application, lack of criminal history or gang affiliation, and his having no outstanding warrants.[16]

Mr. Diaz is a 31-year-old native of Mexico and a noncitizen resident of the United States.[17] "Mr. Diaz is the primary financial provider for his wife and U.S. citizen child currently residing in Utah."[18] Mr. Diaz entered the United States on May 6, 2022.[19] He crossed the southern border at DeConcini Port of Entry in Nogales, Arizona and "presented [himself] for inspection" as an "asylum seeker[.]"[20] Mr. Diaz sought "asylum due to fear for his life in Mexico."[21] The Chief U.S. Customs and Border Protection ("CBP") officer released Mr. Diaz

---

[13] Petition at 3, ¶ 10.

[14] *Id.*

[15] Response at 3.

[16] DHS Record at 3, Exhibit 1 to Response; *see also* USCIS Notice of Action, Exhibit 3 to Petition.

[17] Petition at 3, ¶¶ 7, 13.

[18] *Id.* at 3, ¶ 7; DHS Record at 3, Exhibit 1 to Response.

[19] Petition at 1, ¶ 2.

[20] DHS Record at 3, Exhibit 1 to Response.

[21] Petition at 2, ¶ 3.

that same day, and issued Mr. Diaz a Notice to Appear ("NTA"),[22] thereby initiating a removal proceeding against him under 8 U.S.C.§ 1229a.[23]

The NTA alleged Mr. Diaz was inadmissible and subject to removal under INA § 212(a)(7)(A)(i)(I).[24] Section 212 is codified as 8 U.S.C. § 1182.[25] The NTA advised Mr. Diaz that he was "paroled into the United States of America Pursuant to Section 212(d)(5) of the [INA]."[26] The NTA ordered Mr. Diaz to appear before an Immigration Judge in West Valley City, Utah, on September 28, 2022.[27] There is no parole expiration date identified in the NTA.[28]

Mr. Diaz attaches to his Petition the processed Form I-797C Notice of Action sent September 13, 2023, for his October 2, 2023, biometrics appointment for his asylum application at the USCIS Application Support Center in Las Vegas, Nevada.[29] Respondents agree that CBP released Mr. Diaz on May 6, 2022, but provide no details in their Response about what occurred at the September 28, 2022, removal proceedings before the Immigration Judge.[30] Nor do Respondents explain how they determined that Mr. Diaz's parole expired on September 28, 2022, other than to cite to an internal record dated May 6, 2022.[31] And there is no indication that

---

[22] Notice to Appear, Exhibit 2 to Response. "In removal proceedings under section 240 of the Immigration and Nationality Act." Notice to Appear at 1, Exhibit 2 to Response. Section 240 of the INA refers to 8 U.S.C. § 1229a. *See* U.S. Citizenship and Immigr. Servs., *Immigration and Nationality Act* (last updated July 10, 2019), https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act.).

[23] Response at 2.

[24] Notice to Appear at 3, Exhibit 2 to Response.

[25] *See* U.S. Citizenship and Immigr. Servs., *Immigration and Nationality Act* (last updated July 10, 2019), https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act.).

[26] Notice to Appear at 1, Exhibit 2 to Response.

[27] *See id.*

[28] *See generally id.*

[29] USCIS Notice of Action, Exhibit 3 to Petition.

[30] *Id.* at 2–3.

[31] Response at 2; DHS Record at 3, Exhibit 1 to Response.

Mr. Diaz was informed of a parole expiration date when his biometric information was verified by USCIS on October 2, 2023.[32]

For four years after he was paroled into this country, and after his parole expired according to Respondents, Mr. Diaz lived freely in this country, supporting his wife and child.[33] Mr. Diaz asserts in his Reply: "During that period, he complied with all immigration requirements, maintained employment, timely pursued his [A]sylum [A]pplication, and incurred no criminal convictions."[34] Nevertheless, on May 19, 2026, ICE agents arrested Mr. Diaz.[35] He was not arrested for committing a crime or pursuant to a warrant, but simply for his immigration status.[36] Respondents argue Mr. Diaz's detention is mandatory under 8 U.S.C. § 1225(b)(2)(A).[37] Mr. Diaz filed his Petition on May 22, 2026, shortly after his detention, alleging two claims: (1) statutory violation of the INA for "detaining him under 8 U.S.C. § 1225(b) without complying with the requirements of 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2), and (2) violation of due process.[38]

Mr. Diaz had a master calendar hearing set before an Immigration Judge in West Valley, Utah on June 9, 2026.[39] Both parties subsequently provided a status report. At the master hearing, Mr. Diaz's previously scheduled individual merits hearing on his Asylum Application

---

[32] Notice to Appear at 1–3; DHS Record at 3; *see also* Petition at Exhibit 2, Most Recent I-94, docket 1-2, filed May 22, 2026 ("Admit Until Date 2023 May 05").

[33] Petition at 3, ¶ 13.

[34] Reply at 22.

[35] *Id.* at 3, ¶ 10.

[36] Response at 3.

[37] Response at 2, 9–13.

[38] Petition at 16–18.

[39] Response at Exhibit 3.

was rescheduled for June 29, 2026, before Immigration Judge David Anderson.[40] Mr. Diaz

remains in removal proceedings under 8 U.S.C. § 1229a, and his Asylum Application remains

pending.[41]

## 2   LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who "is in custody in

violation of the Constitution or laws or treaties of the United States."[42] Historically, "the writ of

habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in

that context that its protections have been strongest."[43] Federal courts have jurisdiction to hear

habeas corpus claims by noncitizens challenging the constitutionality of their detention.[44] The

individual in custody bears the burden of establishing that detention is unlawful.[45]

## 3   DISCUSSION

The legal questions presented are complex and evolving. As we continue to see, and "[a]s

the Ninth Circuit has noted, the INA has been compared to a 'morass,' a 'Gordian knot,' and

---

[40] Petitioner's Report of June 9, 2026 Hearing, docket no. 13; Respondents Report of June 9, 2026 Hearing, docket no. 14. Mr. Diaz's original individual merits hearing date was not provided.

[41] Petitioner's Report of June 9, 2026 Hearing, docket no. 13; Respondents Report of June 9, 2026 Hearing, docket no. 14.

[42] 28 U.S.C. § 2241(c)(3).

[43] *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).

[44] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))); *see also Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1217 (10th Cir. 2001) (holding that federal courts retain jurisdiction under 28 U.S.C. § 2241 to review habeas petitions challenging detention under IIRIRA, and IIRIRA does not eliminate this authority.).

[45] *Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184, at *4 (D. Utah January 16, 2026).

'King Minos's labyrinth in ancient Crete.'"[46] Courts in this district,[47] this circuit,[48] and across

the country[49] have been asked to weigh in on the same or similar factual settings in this area of

the law.[50] "In recent months the interplay between § 1225(b)(2) and § 1226(a) has become a

hotly contested issue, with many cases addressing the question of which aliens qualify for the

mandatory detention scheme of § 1225(b)(2) as 'applicant[s] for admission . . . seeking

admission.'"[51] New decisions are issued almost daily. Seven circuits have considered similar

---

[46] *Maldonado Vazquez v. Feeley,* 805 F.Supp.3d 1112, 1137 (D. Nev. 2025) (quoting *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020)).

[47] *Tanchez v. Noem,* 2026 WL 125184 at *10; *Carbajal v. Wimmer*, No. 2:26-CV-00093, 2026 WL 353510 (D. Utah February 9, 2026); *Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300 (D. Utah February 12, 2026); *Vasquez v. Noem, et al.*, No. 2:25-CV-01146-JNP, 2026 WL 309631 (D. Utah February 5, 2026); *Reyes v. United States Immigr. & Custom Enf't*, No. 2:25-CV-01159 TC, 2026 WL 266952 (D. Utah February 2, 2026); *Velasquez v. Brooksby*, No. 4:26-CV-00018-DN-PK, 2026 WL 592355 (D. Utah March 3, 2026).

[48] *Jose-De-Jose v. Noem*, No. CIV-25-1454-SLP, 2026 WL 360045 (W.D. Okla. February 9, 2026); *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064 (D.N.M. February 5, 2026); *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643 (D. Colo. October 24, 2025); *Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344 at **3-5 (W.D. Okla. January 6, 2026); *Montoya v. Holt*, No. CIV-235-1231-JD, 2025 WL 3733302 at **5-12 (W.D. Okla. December 26, 2025); *Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287 (W.D. Okla. January 23, 2026); *Rafibaev v. Noem*, No. 26-CV-00461-PAB, 2026 WL 607559, at *4 (D. Colo. Mar. 4, 2026).

[49] *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *2 (N.D. Cal. September 12, 2025); *Bautista v. Santacruz* ("*Bautista I*"), No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. February 18, 2026); *Bautista v. Santacruz* ("*Bautista II*"), No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. December 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. December 18, 2025); *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. October 14, 2025); *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787 (N.D. Ill. October 24, 2025); *N-E-M-B v. Wamsley*, No. 3:25-CV-989-SI, 2025 WL 3527111 (D. Or. December 9, 2025); *Faizyan v. Casey*, 2025 WL 3208844, at *4-6 (S.D. Cal. November 17, 2025); *Lepe v. Andrews*, 801 F.Supp.3d 1104, 2025 WL 2716910, at *4-9 (E.D. Cal. September 23, 2025); *Petion v. Hyde*, No. 2:25-CV-00535-SDN, 2025 WL 3072567 (D. Me. November 3, 2025); *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575 (W.D.N.Y. November 25, 2025); *Huang v. Almodovar*, No. 25 CIV. 9346 (DEH), 2025 WL 3295912 (S.D.N.Y. November 26, 2025); *Maldonado v. Cabezas*, No. CV 25-13004, 2025 WL 2985256, at *4 (D.N.J. October 23, 2025); *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *20 (S.D. W. Va. February 4, 2026); *Tinajero Rodriguez v. Mason, et al.*, No. 2:26-CV-00122, 2026 WL 510426, at *2 (S.D. W. Va. February 24, 2026); *Chavez Ochoa & Nunez Lopez v. Mason, et al.,* No. 2:26-CV-00130, 2026 WL 541144, at *2 (S.D. W. Va. February 26, 2026); *Sanchez v. Noem, et. al.*, No. CV 3:26-0067, 2026 WL 483475, at *4 (S.D. W. Va. February 20, 2026); *Dominguez Izaguirre v. Mason, et al.*, No. 2:26-CV-00121, 2026 WL 561235, at *7 (S.D. W. Va. February 27, 2026); *Urquilla-Ramos v. Trump*, No. 2:26-CV-00066, 2026 WL 475069, at *18 (S.D. W. Va. February 19, 2026); *Coalition for Humane Immigrant Rights v. Noem,* 805 F.Supp.3d 48, 64 (D.C. Cir. August 1, 2025).

[50] For a relatively current summary of cases, *see* Kyle Cheney, Even Trump's own appointees are ruling against ICE's mass detention strategy, Politico, February 12, 2026; *see also* Kyle Cheney & Jessie Blaeser, Explore the data: More than 13,600 rulings against Trump in Ice cases, Politico, June 16, 2026.

[51] *Villegas Salazar v. Sheriff of Linn County, et al.*, No. C26-98-LTS-MAR, 2026 WL 1651508, at *2 (N.D. Iowa June 8, 2026); *Coalition for Humane Immigrant Rights v. Noem,* 805 F.Supp.3d at 64. By contrast, 8 U.S.C.

issues, but not the specific issue here: under which statute a parolee may be re-detained.[52] The Tenth Circuit has not yet issued an opinion on these decisive issues. And Respondents acknowledge that no binding authority exists.[53]

A noncitizen "who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act [codified as 8 U.S.C. § 1229a] shall be detained in accordance with section 235(b) of the Act [codified as 8 U.S.C. § 1225(b)]."[54] Detention is mandatory,[55] but the government may, in its discretion, temporarily parole such aliens "for urgent humanitarian reasons or significant public benefit."[56]

The parties agree that Mr. Diaz was originally detained at the border and then paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) when he was stopped by CBP at the border on May 6, 2022.[57] At issue is whether Mr. Diaz is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) following his release by CBP and parole under 8 U.S.C. § 1182(d)(5)(A).[58] Respondents argue that his mandatory detention should be found "lawful."[59] Mr. Diaz argues

---

§ 1226(a) sets forth "the default rule" for detaining noncitizens "already in the country." *Jennings*, 583 U.S. at 303. 13081, at *7 (D. Me. Oct. 28, 2025), *Campbell v. Almodovar*, No. 25-cv-7426, 2025 WL 3538351, at *9 (S.D.N.Y. Dec. 10, 2025); *Rodriguez v. Rokosky*, No. 25-cv-10976, 2025 WL 3485628, at *2 (D.N.J. Dec. 3, 2025); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302–04 (E.D.N.Y. 2025).

[52] *Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313 (D.C. Cir. November 22, 2025); *Castañon-Nava v. U.S. Department of Homeland Security*, 161 F.4th 1048 (7th Cir. 2025); *Lopez-Campos, et al. v. Raycraft, et. al.*, 2026 WL 158198 (6th Cir. 2026); *Buenrostro-Mendez v Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026).

[53] *See* Response at 5–13.

[54] 8 C.F.R. § 235.3.

[55] *See* 8 U.S.C. §§ 1225(b).

[56] *Id.* at 8 U.S.C. § 1182(d)(5); *see Jennings*, 583 U.S. at 287–88.

[57] Reply at 18 (discussing Section 1225's governing applicants for admission and the parole scheme under 8 U.S.C. § 1182(d)(5)(A)); Response at 1.

[58] Reply at 5; Response at 5–6, 11.

[59] Response at 2, 13 (requesting as relief a finding that "Mr. Diaz is lawfully detained under 8 U.S.C. § 1225(b)(2)(A)").

that Respondents have not established that his "parole was lawfully terminated," and that regardless, he should be "subject to the framework established by § 1226."[60]

After thorough review of the parties' memoranda, the applicable statutes,[61] persuasive authorities,[62] and applicable federal regulations,[63] central legal issues emerge: (1) whether Mr. Diaz may be detained under Section 1225(b)(2); and (2) whether due process bars Respondents from detaining Mr. Diaz until parole has been properly terminated. Each issue is addressed in turn.

### 3.1   Section 1226(a) Governs Mr. Diaz's Detention

The parties dispute which section of the INA governs Mr. Diaz's detention: 8 U.S.C. § 1225(b)(2) or § 1226(a).[64] "That assessment turns on whether Petitioner was an 'arriving alien' at the time of his recent detention or was then 'present in the United States.'"[65] This issue arises because of the new administration's interpretation of the law, rooted in an internal email ("Internal Guidance").[66]

---

[60] Reply at 8, 21.

[61] 28 U.S.C. § 2241; 8 U.S.C. §§ 1225; 1226(a), 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i).

[62] *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1139 (D. Or. 2025); *Rafibaev v. Noem*, 2026 WL 607559, at *4; *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d at 90; *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 309; *Tenesaca-Lema*, 810 F. Supp. 3d 244, 252; *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025); *Campbell v. Almodovar*, 2025 WL 3538351, at *9; *Rodriguez v. Rokosky*, 2025 WL 3485628, at *2.

[63] *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d at 1139.

[64] Petition at 13, ¶ 56 ("granting Petitioner recognition of his procedural protections under § 1226(a)"); Response at 2; Reply at 18 (arguing that in the alternative detention is governed under 8 U.S.C. § 1226(a)).

[65] *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 249.

[66] *See Coalition for Humane Immigrant Rights v. Noem*, 805 F.Supp.3d at 68, n. 13. DHS has not published this directive; instead, it was reported by Reuters in early March 2025. *See* Ted Hesson & Kristina Cooke, Trump Weighs Revoking Legal Status of Ukrainians as US Steps Up Deportations, Reuters (March 6, 2025), https://perma.cc/MT7S-MR4Y (citing an 'internal ICE email' available at https://perma.cc/S3LJ-AFJM)*; see also Interim Guidance*, AILA Doc. No. 25071607 (July 8, 2025), available at: https://perma.cc/5GKM-JYGX (discussing releases on parole). The government did not dispute the authenticity of the document when it was submitted in a D.C. district court class action.

In a May 2026 study prepared by the U.S. Government Accountability Office ("GAO") for "congressional requesters," the GAO found: "According to our analysis of CBP data, from October 2018 through May 2025, [Office of Field Operations] and Border Patrol granted about 2.4 million paroles out of their nearly 10.4 million encounters at the southwest border."[67] A "majority of these paroles [occurred] at ports of entry."[68]

Recent litigation has highlighted a dispute regarding DHS's authority to re-detain parolees under 8 U.S.C. § 1225(b)(2) following termination or expiration of parole.[69] Respondent relies on statutory and regulatory provisions that contemplate the return of parolees to custody upon parole termination.[70] But the record suggests that, until recently, DHS often did not routinely pursue enforcement or detention actions against parolees whose parole had expired or been terminated.[71]

Respondents invoke § 1225(b)(2) as the basis for Mr. Diaz's detention.[72] Respondents also cite 8 C.F.R. § 212.5(e)(1), which Respondents argue allows for automatic termination of parole and no entitlement to a bond hearing.[73] Respondents' positions, if correct, would require a

---

[67] U.S. Government Accountability Office, GAO-26-107765, *Additional Information Could Inform Enforcement Decisions for Noncitizens Paroled at the Southwest Border* (May 2026) ("GAO Report").

[68] *Id.*

[69] *See generally Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123; *Rafibaev v. Noem*, 2026 WL 607559; *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48; *Martinez v. Hyde*, 792 F. Supp. 3d 211; *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 309; *Tenesaca-Lema*, 810 F. Supp. 3d 244; *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025)–53; *Campbell v. Almodovar*, 2025 WL 3538351, at *9; *Rodriguez v. Rokosky*, 2025 WL 3485628, at *2.

[70] Response at 5–9.

[71] *See* DHS Office of Inspector General, *DHS Needs to Improve Oversight of Parole Expiration for Select Humanitarian Parole Processes*, Report, No. OIG-25-30 (July 3, 2025) (finding that DHS lacked a well-defined process for addressing parole expirations and "did not initiate enforcement actions for parolees whose parole expired."); *see also* GAO Report, GAO-26-107765.

[72] Response at 3, 10.

[73] *Id.* at 2, 13.

11

complete denial of Mr. Diaz's Petition.[74] However, Respondents are not correct; § 1226(a) governs Mr. Diaz's detention.

### 3.1.1  DHS Authorized Mr. Diaz's Entry into the United States Through Its Limited Parole Exception to Mandatory Detention

"Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens."[75] "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." [76] "But if a § 1225(b)(1) alien 'indicates either an intention to apply for asylum . . . or a fear of persecution,' then that alien is referred for an asylum interview."[77] If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'"[78] "Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process."[79] "Those aliens 'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country."[80]

Regardless of whether 8 U.S.C. § 1225(b)(1) or (2) authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit.[81] The power to parole emanates from 8 U.S.C. § 1182, which states: "The Attorney General may . . . in his discretion parole into the United States . . . on a case-by-

---

[74] *Id.* at 1–2.

[75] *Jennings*, 583 U.S. at 287.

[76] *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)).

[77] *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(ii)).

[78] *Id.*

[79] *Id.* at 288.

[80] *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)).

[81] *Id.* (citing 8 U.S.C. § 1182(d)(5) 8 C.F.R §§ 212.5(b), 235.3 (2017).).

case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission into the United States."[82] "That express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released."[83] The decision to grant parole pursuant to 8 U.S.C. § 1182(d)(5)(A) is determined "on a case-by-case basis."[84]

The language in 8 C.F.R. § 212.5, the Homeland Security regulation which implements 8 U.S.C. § 1182, is nearly identical to the statutory language but expands the list of persons able to grant or terminate this parole.[85] It allows the Secretary of Homeland Security (and delegees)[86] to parole or terminate parole of individuals within certain groups on a "case-by-case basis" for "urgent humanitarian reasons" or "significant public benefit," so long as they are not a security or flight risk.[87]

The parties do not dispute that Mr. Diaz was paroled under 8 U.S.C. § 1182.[88]

### 3.1.1  Section 1225 Applies Only to Noncitizens Who Are Actively "Seeking Admission"

Respondents lean on the purported "entry fiction" theory to argue that Mr. Diaz is legally considered at the border seeking admission, despite his multiple years living in the United States.

---

[82] 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

[83] *Jennings*, 583 U.S. at 300.

[84] 8 U.S.C. § 1182(d)(5)(A).

[85] *See* 8 C.F.R. § 212.5 ("The authority of the Secretary to continue an alien in custody or grant parole under section 212(d)(5)(A) of the Act shall be exercised by the Assistant Commissioner, Office of Field Operations; Director, Detention and Removal; directors of field operations; port directors; special agents in charge; deputy special agents in charge; associate special agents in charge; assistant special agents in charge; resident agents in charge; field office directors; deputy field office directors; chief patrol agents; district directors for services; and those other officials as may be designated in writing, subject to the parole and detention authority of the Secretary or his designees. The Secretary or his designees may invoke, in the exercise of discretion, the authority under section 212(d)(5)(A) of the Act.").

[86] *Id.*

[87] *Id.*

[88] Response at 3; Petition at 7, ¶ 38.

In *Leng May Ma v. Barber*, the Supreme Court stated: "[A] paroled alien is considered . . . in theory of law at the boundary line and had gained no foothold in the United States."[89] Respondents argue that this fiction enlarges the "prison bounds," and "all parolees, without exception, are deemed to be knocking at the gates, rather than 'in' the country, and this status does not change once parole is terminated."[90] But this case is distinguishable from *Leng May Ma*.[91]

Respondents place far more weight on *Leng May Ma* than the decision can bear. The Supreme Court addressed only whether a noncitizen was "excludable" under a prior version of the INA, a statutory framework that Congress has since replaced with the concept of "inadmissible," among other requirements. Similar to *Leng May Ma*, Mr. Diaz's parole did not alter his status as inadmissible, but this is not material because inadmissibility is not the only requirement for the post-*Leng May Ma* statutory framework under 8 U.S.C. § 1225(b)(2). *Leng May Ma* did not interpret § 1225(b)(2); did not address the statutory consequences of parole under the framework after the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996; and did not consider whether a noncitizen who has already been granted parole satisfies all of the conditions necessary for § 1225(b)(2) to apply.[92] Its holding, therefore, extends no further than the unremarkable proposition that parole is not admission.

Rather, § 1225(b)(2)(A) requires that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not

---

[89] *Leng May Ma v. Barber*, 357 U.S. 185, 78 S. Ct. 1072, 2 L. Ed. 2d 1246 (1958) (interpreting the distinct term "within the United States" for purposes of a different provision of the INA, 243(h), and 8 U.S.C. 1253(h)); *see also* Response at 10.

[90] Response at 9.

[91] *Id.* at 9–10.

[92] *See generally Leng May Ma v. Barber*, 357 U.S. 185.

14

*clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a." [93] "[T]his language requires that 'several conditions must be met' to impose mandatory detention."[94] The noncitizen must be: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted."[95]

The phrase "seeking admission" is undefined in the statute, but "admission" is defined under 8 U.S.C. § 1101(a)(13)(A) as "the lawful entry of the alien into the United States after inspection and authorization by the immigration officer."[96] The plain meaning of "admission" refers to an affirmative presentation for inspection or attempt to enter the United States at or through a designated entry process. Lawful entry refers to the process of "inspection and authorization by the immigration officer."[97] Absent such an affirmative act, the statutory threshold for "seeking admission" is not met.

Mr. Diaz was inspected at the border and granted parole. He is no longer "seeking admission" within the meaning of the INA for purposes of mandatory detention under § 1225(b)(2).[98]

---

[93] 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

[94] *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 309 (quoting *Martinez v. Hyde*, 792 F. Supp. 3d at 214).

[95] *Id.*

[96] 8 U.S.C. § 1101(a)(13)(A); *see also Rodriguez-Acurio v. Almodovar,* 811 F. Supp. 3d at 309.

[97] *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 309 ("Moreover, while [Petitioner's] participation in the credible fear process may indicate that '[]he continues to "seek" something, what []he seeks is not "admission" or "lawful entry" to the United States, but to obtain a lawful means to *remain* here" where []he has been continuously residing for more than four years.")

[98] Response at 6.

### 3.1.2   A Paroled Noncitizen Residing in the United States Is Not Subject to Mandatory Detention Under § 1225(b)(2)

After a noncitizen has undergone inspection, been granted parole, and physically enters the interior of the United States, they are no longer an applicant arriving at a port of entry.[99] This means that the narrow procedural mechanisms of 8 U.S.C. 1225(b)(2) no longer govern the noncitizen's custody or removal proceedings. [100] Applying the plain meaning of 8 U.S.C. § 1225(b)(2)(A), parole allows noncitizens a process for temporary lawful entry into the United States, no longer "seeking admission" but "remain[ing] here," as an "applicant for admission."[101] This is because the noncitizen has already been inspected, placed into 8 U.S.C. § 1229a removal proceedings, and then authorized entry into the United States after being paroled under 8 U.S.C. § 1182.

"Hundreds of district courts decisions have rejected the 'entry fiction' narrative" that Respondents utilize from *Leng May Ma*.[102] These courts have instead determined that when a noncitizen is released on parole under 8 U.S.C. § 1182(d)(5)(A) "they are removed from the ambit of the mandatory detention regime established in Section 1225," and detention is instead governed under § 1226(a)'s discretionary detention scheme.[103] As opposed to mandatory

---

[99] *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 309.

[100] *Id.*; *see also Castañon-Nava v. U.S. Department of Homeland Security*, 161 F.4th at 1061*; Salgado v. Francis*, No. 25-CV-6524 (VEC), 2026 WL 915304, at *6 (S.D.N.Y. Apr. 3, 2026).

[101] 8 U.S.C. 1225(b)(2)(A). These circumstances differ from those of an unlawful entry under 8 U.S.C. § 1325, which carries criminal penalties and occurs when a person enters or attempts to enter the United State either (1) without inspection by immigration officers, (2) by using fraud or misrepresentation to gain admission, or (3) by entering at a time or place not designated for lawful entry or in a manner that evades the inspection process. 8 U.S.C. § 1325.

[102] *Salgado v. Francis*, 2026 WL 915304, at *6.

[103] *Id.* at n.13 ("*see e.g., Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *10–11 (S.D.N.Y. Dec. 17, 2025) (slip op.) ("[Section] 1182(d)(5)(A) does *not* state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." (emphasis in original)); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 302–05 ("[A]fter Respondents paroled [petitioner] into the United States under Section 1182(d)(5)(A), they treated her as a noncitizen subject to Section 1226 and not as a noncitizen subject to mandatory detention under any of the applicable provisions of Section 1225(b)" and thus, Section 1225(b)(2) does not govern petitioner's detention); *Coalition for Humane Immigrant Rights*, 805 F.

detention, and by contrast, 8 U.S.C. § 1226(a) sets forth "the default rule" for detaining

noncitizens "already in the country."[104]

"[C]ourts have recognized a meaningful distinction between humanitarian parole under

§ 1182(d)(5)(A) and conditional parole under § 1226(a)."[105] This distinction is limited to entry

and not detention.[106] The Department of Homeland Security's ("DHS") own regulations

contemplate that, following termination of parole, a noncitizen may be placed into proceedings

under either INA § 235 or INA § 236, codified as 8 U.S.C. §§ 1225 and 1226.[107]

Just as in *Tanchez*,[108] and other persuasive decisions from this district,[109] which

concluded that § 1225 mandatory detention cannot extend to interior inhabitants who are not

---

Supp. 3d at 90 (holding that § 1225(b) "does not authorize designation for expedited removal of any noncitizen who has, at any point in time, been paroled into the United States"); *Aviles-Mena v. Kaiser*, No. 25-CV-06783 (RFL), 2025 WL 2578215, at *5 n.5 (N.D. Cal. Sept. 5, 2025) ("The automatic termination of [humanitarian] parole does not give the government *carte blanche* to re-detain a non-citizen where no valid statutory purpose is served."); *Khubiev v. Baltasar*, No. 25-CV-03955 (STV), 2026 WL 864237, at *5–6 (D. Colo. Mar. 30, 2026) (slip op.) ("Although Petitioner's [humanitarian] parole expired in July 2022, DHS permitted him to reside in the United States for several years thereafter[.] ... His detention therefore does not arise from any ongoing entry or inspection process[.] ... In that posture, detention is properly understood as detention 'pending a decision on whether the alien is to be removed,' which falls within Section 1226(a), notwithstanding Petitioner's initial classification at the time of entry." (internal citations omitted)); *Xu v. Bondi*, No. 26-CV-1765 (GPC) (DEB), 2026 WL 836667, at *5 (S.D. Cal. Mar. 26, 2026) (slip op.) ("Petitioner is no longer an 'arriving' noncitizen after having resided here for over three years. In addition, beyond the fact that he has been present in this country for a [three]-year period, he also has been paroled [under Section 1182(d)(5)(A)] into the United States. Therefore, the Court finds that Petitioner could not be subject to [Section] 1225.")").

[104] *Jennings*, 583 U.S. at 303 (citing 8 U.S.C. § 1226(a)).

[105] *Cheema v. Grant*, No. CIV-26-551-J, 2026 WL 1450404, at *2 (W.D. Okla. May 21, 2026).

[106] *Carbajal v. Wimmer*, 2026 WL 353510, at *2 (D. Utah Feb. 9, 2026) ("[T]he two types of parole under immigration law differ because only one of them is a type of legal entry.");

[107] 8 C.F.R. § 212.5(e).

[108] *Tanchez v. Noem*, 2026 WL 125184, at n.7 (finding "that the use of active verbs coupled with the use of the term "inspection" indicates that § 1225(b)(2) applies to the border context.").

[109] *Lemus Cristales v. Arbon*, No. 2:26-CV-00217-JNP, 2026 WL 892874, at *3 (D. Utah Mar. 31, 2026) (rejecting that the petitioner was "seeking admission" under 1225(b), but rather was a noncitizen already in the country under 1226); *Torres v. Tjaden*, No. 2:26-CV-00195-JNP, 2026 WL 800677, at *12 (D. Utah Mar. 23, 2026). In *Torres*, the district court explains :"Taking the statute at face value, Petitioner is indeed an applicant for admission. He is a noncitizen 'present in the United States who has not been admitted.' 8 U.S.C § 1225(a)(1). However, the Petitioner is not 'seeking admission' into the United States. That is not to say he has been admitted, as defined in 8 U.S.C. § 1101(a)(13)(A) (defining admission or admitted as 'the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer')).Rather, it reflects the reality that Petitioner has been in the

17

actively "seeking admission" at a physical port of entry, the same logic must apply to a paroled noncitizen who is paroled into the interior.[110] Mr. Diaz was paroled into the United States like "hundreds of thousands of noncitizens paroled into the United States in recent years after inspection at a port of entry and who no face the threat of removal under highly truncated procedures that have rarely, if ever been applied at any scale to parolees."[111] Mr. Diaz is not actively seeking to enter the United States. He has freely lived here since May 6, 2022. Under the plain reading of the phrase "seeking admission," Mr. Diaz sought admission when he entered the United States on May 6, 2022.[112]

Sections 1225 and 1226 are "mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226."[113] Because neither § 1225(b)(1) or (b)(2) govern Mr. Diaz's detention, as explained above, is instead governed by § 1226(a).[114]

For four years after he was paroled into this country, Mr. Diaz lived freely in this country, supporting his wife and child.[115] "During that period, he complied with all immigration requirements, maintained employment, timely pursued his asylum application, and incurred no criminal convictions."[116] Under these circumstances, he cannot be considered waiting at the

---

United States for over two years and is not actively seeking admission. Thus, § 1225(b)(2) does not apply to his case." *Id.*

[110] *See generally Carbajal v. Wimmer*, No. 2:26-CV-00093, 2026 WL 353510, at *2.

[111] *Coalition for Humane Immigrant Rights v. Noem,* 805 F.Supp.3d at 64.

[112] Petition at 2; *see also Arroyo v. Warden*, No. 3:26-CV-01034, 2026 WL 1286850, at *5 (M.D. Pa. May 11, 2026) (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who had resided in the United States for longer than two years)..

[113] *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 311 (quoting *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 485 (S.D.N.Y. 2025)).

[114] *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 311.

[115] Petition at 3, ¶ 13.

[116] Reply at 22.

gates under Respondents' theory even under the entry fiction doctrine. Mr. Diaz's circumstances are more aptly characterized as a noncitizen "present in the United States."[117] Therefore, question of Mr. Diaz's detention is properly governed by 8 U.S.C. § 1226.

Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings,"[118] but only when a noncitizen is "arrested and detained" "[o]n a warrant issued by the Attorney General."[119] Because § 1226(a) applies to Mr. Diaz and he was arrested without a warrant, his detention was unlawful at its inception and it remains unlawful.

### 3.2 Respondents Did Not Comply with the Applicable Statutory and Regulatory Procedures Terminating Mr. Diaz's Parole

To terminate previously granted parole, and re-detain, Respondents must comply with the applicable regulatory and statutory requirements.[120] Pursuant to 8 U.S.C. § 1182(d)(5)(A), parole may be terminated "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled."[121] The applicable regulatory section, 8 C.F.R. § 212.5(e)(1) and (2)(i), governing the "[t]ermination of parole" provides:

> (e)(1) Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized, and *in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section*

---

[117] *Castañon-Nava v. U.S. Department of Homeland Security*, 161 F.4th at 1061.

[118] 8 U.S.C. § 1226(a).

[119] *Id.*

[120] *United States v. Caceres*, 440 U.S. 741, 760 (1979); 8 C.F.R. § 212.5(e)(2)(i) (procedures for terminating parole); *see also Y-Z-L-H v. Bostock*, 792 F. Supp. 3d at 1139 (holding that the government failed to follow the applicable statutory and regulatory provisions and that paroled noncitizens cannot be subject to expedited removal proceedings).

[121] *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also Tanchez v. Noem*, 2026 WL 125184, at *4.

except that no written notice shall be required.

> (e)(2). . . . [U]pon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.[122]

Thus, the implementing regulations of 8 U.S.C. § 1182(d)(5)(A), required that Mr. Diaz be "processed in accordance with subsection (e)(2)," even though notice of automatic termination is not required under subsection (e)(1). Section 212.5(e)(2) provides that parole may terminate only upon notice and only if the purpose of parole is accomplished, or if the humanitarian reasons and the public benefit no longer justify parole.[123] Nothing in the record reflects that this has occurred. And Respondents have not argued that these requirements were met. Rather, Respondents simply rely on the NTA hearing date as an implied expiration date for Mr. Diaz's parole. This does not suffice.

Respondents incorrectly simplify 8 C.F.R. § 212.5(e)(1) and (2), and fail to address the relationship between the subsections.[124] The Response omits analysis pertaining to whether automatic termination under subsection (e)(1) must nevertheless satisfy the procedural requirements set forth in subsection (e)(2).[125] Respondents do not provide any findings or documentation that DHS's Secretary or delegees have determined that the purpose of the parole has been "accomplished," or that "humanitarian reasons nor public benefit [no longer] warrant[]

---

[122] 8 C.F.R. § 212.5(e)(2)(i) (emphasis added).

[123] *Id.*

[124] Response at 5. The only time that 8 C.F.R. § 212.5(e)(2) is addressed in the Response is on page 5: "However, federal regulations authorize multiple avenues for terminating parole. Parole may be terminated either on notice pursuant to 8 C.F.R. § 212.5(e)(2)(i) *or* automatically, without written notice, pursuant to 8 C.F.R. § 212.5(e)(1)."

[125] *Id.*

the continued presence of [Mr. Diaz] in the United States."[126] Nor is there record evidence that

Mr. Diaz was ever informed or had notice of the purported September 28, 2022, parole

termination date. Instead, Respondents only assert in conclusory fashion that parole termination

is automatic; that Mr. Diaz's parole had expired; and that he did not voluntarily return to

custody.[127]

The parties dispute the actual date on which Mr. Diaz's parole may have automatically

terminated: September 28, 2022 (based on the expiration date within an internal DHS record),

versus April 24, 2026.[128] Petitioner gives no rationale for the April 24, 2026, date he suggests.

But this is irrelevant because the remaining requirements of 8 C.F.R. § 212.5(e)(2) have not been

established. The issue shall, nevertheless, be addressed because Respondents rely on the

September 28, 2022, termination date to argue that Mr. Diaz must be detained.[129]

Other than the internal DHS record there is no supporting documentation that

demonstrates whether Mr. Diaz's parole terminated on September 28, 2022, or that he was ever

made aware of that fact, so that he could have known to voluntarily return to custody as

Respondents suggest. If this date in the internal record is "borrowed" from the NTA it is

insufficient. The NTA only generally informs Mr. Diaz that he is "paroled" and informs him of

the charges against him and the time and place of the *hearing*, September 28, 2022.[130] This date

does not indicate that his parole is or will be terminated, only that an immigration judge will

---

[126] *Id.* at 3, 5 ("Mr. Diaz's parole from custody expired on September 28, 2022. At the expiration of his parole, he did not voluntarily return to the custody from which he was paroled . . . . He was therefore arrested and detained by Immigration and Customs Enforcement . . . ."); *see also* 8 C.F.R. § 212.5(e)(2)(i) (emphasis added).

[127] *See* Response 3, 5–9. Respondents do not provide any analysis of 8 C.F.R. § 212.5(e)(2)'s requirements.

[128] *Compare* Response 2, 5–6, *with* Reply at 17.

[129] Response at 10.

[130] Notice to Appear at 1, Exhibit 2 to Response.

review his removal. Respondent's position begs the question: If Mr. Diaz's parole terminated September 28, 2022, why did USCIS process biometrics for his Asylum Application on October 2, 2023, and not detain him?[131] Mr. Diaz's Asylum Application remains pending.[132]

First, based on the information in the record, it is unclear if 8 C.F.R. § 212.5(e)(1) has been met because of the lack of clarity on when Mr. Diaz's parole expired, or if he was ever made aware of the expiration date. Additionally, Respondents have not addressed whether, under 8 C.F.R. § 212.5(e)(2), an authorized individual determined that the purpose of Mr. Diaz's humanitarian parole has been accomplished, or that the public benefit no longer justifies his presence.[133]

"[I]n 1996, Congress restricted the Executive Branch's discretion under the statute [§ 1182(d)(5)(A)] by adding the language that parole be granted only on 'a case-by-case basis for urgent humanitarian reasons or significant public benefit.'"[134] District courts that have addressed the termination of § 1182(d)(5)(A) parole "have found that just as a grant of parole requires an individualized review, revocation of parole requires a case-by-case assessment to comply with the statute."[135]

---

[131] Petition at 2, ¶¶ 3, 6, Exhibit 3, USCIS Notice of Action.

[132] Petition at 2, ¶ 5.

[133] *See generally* Response.

[134] *Coalition for Humane Immigrant Rights v. Noem,* 805 F.Supp.3d at 64 (citing *See* IIRAIRA § 602(a), 110 Stat. at 3009-689).

[135] *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (citations omitted) (addressing termination of § 1182(d)(5)(A) parole, and granting the petitioner's motion for preliminary injunction and ordering that the petitioner be released); *see, e.g.*, *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d at 1137–47 (addressing this issue, and granting the petitioner's habeas petition and ordering that the petitioner be released from custody); *Loaiza Arias,* 2025 WL 3295385, at *2–4 (same); *Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10–13 (S.D. Cal. Oct. 1, 2025) (same); *Munoz Materano v. Artetav*, No. 25 CIV. 6137 (ER), --- F. Supp. 3d ----, 2025 WL 2630826, at *14–17 (S.D.N.Y. Sept. 12, 2025) (same); *Gabriel B.M. v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025 WL 3443584, at *6–7 (D. Minn. Dec. 1, 2025) (addressing this issue, and granting the petitioner's request for a preliminary injunction and ordering the petitioner's release from custody); *Orellana v. Francis*, No. 25-cv-04212 (OEM), 2025 WL 2822640, at *2–3 (E.D.N.Y. Oct. 3, 2025) (addressing the issue in the context of a motion for

There is no indication in the record that any such case-by-case determination regarding Mr. Diaz's parole was made. "In fact, nothing in the record reflects . . . (1) who made the decision to detain him, (2) when that decision occurred, (3) on what basis the decision to detain him was made, (4) whether there was any material change in circumstances with respect to [Mr. Diaz] that triggered his detention, or (5) whether there was any sort of new policy in place that triggered his detention."[136] And, "[t]he utter lack of transparency here is problematic, to say the least, as it makes it impossible to determine why [Mr. Diaz] was detained in the first place."[137]

On this record, Respondents failed to comply with the applicable statutory and regulatory provisions governing termination of Mr. Diaz's parole. Therefore, Mr. Diaz could not have been lawfully detained under 8 U.S.C. § 1226(a) when he was arrested on May 19, 2026, and his continued detention remains unlawful.

### 3.3   Mr. Diaz's Liberty Interests Have Been Violated

Mr. Diaz claims his detention without a bond hearing violates his procedural due rights.[138] Respondents maintain that detention is proper because "[a]t the expiration of his parole, he did not voluntarily return to the custody from which he was paroled . . . [and] therefore [he was] arrested and detained by [ICE]."[139] The "essence of due process is the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'"[140] As discussed above, Respondents have not addressed the procedural requirements of

---

reconsideration filed by the respondents, and affirming the court's grant of habeas relief to the petitioner and the court's order to release the petitioner).

[136] *Lopez Benitez v. Francis*, 795 F. Supp. 3d at 494.

[137] *Id.*

[138] Petition at 13–15.

[139] Response at 3.

[140] *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (1951) (Frankfurter, J., concurring)).

8 C.F.R. § 212.5(e)(1) and (2). Respondents also do not address what documents or evidence support that Mr. Diaz knew that he should have left the country or voluntarily returned to custody.

The Tenth Circuit applies the "three distinct factors" established by the Supreme Court in *Mathews v. Eldridge*[141] to determine procedures "necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution."[142] To determine what process is due, courts consider three factors: "(1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest."[143]

### 3.3.1   The Private Interest Affected

First, Mr. Diaz has a clear interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."[144] Noncitizen detainees have liberty interests affected by the application of 8 U.S.C. § 1225. Some liberty interests other courts have identified include: due process procedural protections;[145] "reliance interests;"[146] "continued freedom from civil immigration confinement[;]"[147] and "the most significant liberty interest there is—the interest in being free from imprisonment."[148] Respondents fail to acknowledge that

---

[141] *Id.*

[142] *Hattrup v. United States*, 845 F. App'x 733, 737 (10th Cir. 2021); *United States v. Muhtorov*, 20 F.4th 558, 623 (10th Cir. 2021);  *see also Mathews v. Eldridge*, 424 U.S. 319.

[143] *Mathews v. Eldridge*, 424 U.S. 319; *see also Martinez v. Chestnut*, No. 1:25-CV-1826 TLN CKD P, 2026 WL 121221, at *3 (E.D. Cal. January 16, 2026).

[144] *Zadvydas*, 533 U.S. at 690.

[145] *Aceros*, 2025 WL 2637503 at *8; *Briceno Solano v. Mason*, 2026 WL 311624 at *14.

[146] *Aceros*, 2025 WL 2637503 at *8 (quoting Memorandum from Benjamine Huffman, Acting Sec'y of Homeland Sec., to U.S. Immigr. & Customs Enf't et al., *Guidance Regarding How to Exercise Enforcement Discretion* (January 23, 2025) (recognizing that noncitizens granted parole have "reliance interests")).

[147] *Lopez Benitez*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025).

[148] *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395 (S.D.N.Y. 2025).

liberty granted, even limited liberty, is protected by due process safeguards. The Supreme Court has held that a protected liberty interest may arise from a conditional release, like parole, from physical restraint.[149] Mr. Diaz had a liberty interest when he was released on parole in May of 2022, and through his continued ability to live freely within the United States for the four years following the grant of parole.

Respondents cite to *Sierra v. INS*, in support of their position that "'the Due Process Clause does not provide him a liberty interest in being released on parole' because he is legally considered to be detained at the border and hence as never having effected entry into this country."[150] That reliance is misplaced. *Sierra* involved a continuously detained noncitizen in pre-IIRIRA exclusion proceedings, not a parolee who had been released and was later returned to custody under the current statutory scheme.[151]

The Tenth Circuit held that, under the circumstances in *Sierra*, the detained noncitizen had no protected liberty interest in obtaining discretionary parole.[152] The issue presented with Mr. Diaz, however, concerns Respondents' attempt to re-detain an individual who had long been at liberty. Mr. Diaz's circumstances do not involve the denial or revocation of a prospective parole determination based on his criminal history. DHS inspected Mr. Diaz at the border, granted him parole, and released him from detention under 8 U.S.C. § 1182.[153]

For over four Mr. Diaz was free from custody before his re-detention, working, and supporting a wife daughter.[154] Mr. Diaz is entitled to the legal protections provided under 8

---

[149] *Young v. Harper*, 520 U.S. 143, 147 (1997) (citing *Morrissey v. Brewer*, 408 U.S. at 477)).

[150] *Sierra v. INS.*, 258 F.3d at 1219.

[151] *Id.* at 1218.

[152] *Id.* at 1219.

[153] Response at 6.

[154] *See* Petition at 3, 9, ¶¶ 7, 44; *see also* Reply at 24–25.

U.S.C. § 1182 and its associated regulation, 8 C.F.R. § 212.5.[155] Mr. Diaz's liberty interests are elevated and underscored by the duration of his parole; his ongoing Asylum Application; Respondents' failure to demonstrate that his parole had terminated; the lack of notice of a parole expiration date; and the previous alleged extensions of parole up until this year.[156] On this record, Mr. Diaz has a clear interest in remaining free from detention.

### 3.3.2  The Risk of Erroneous Deprivation

The second *Mathews* factor also weighs in Mr. Diaz's favor. Again, civil immigration detention, which is "nonpunitive in purpose and effect" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.[157] Respondents do not contend that Mr. Diaz is or was a flight risk or a danger to the community. And nothing in the record suggests that he is a flight risk or danger to the community. Therefore, the risk of erroneous deprivation of Mr. Diaz's rights is significant.

### 3.3.3  The Government's Interest

Regarding the last *Mathews* factor, the government clearly has an interest in enforcing immigration laws, but Respondents' interest in detaining Mr. Diaz without a warrant, notice to appear, or any justifiable reasonable explanation for his detention is "low."[158] Thus, there is no apparent governmental interest favoring Mr. Diaz's continued detention without meeting the statutory and regulatory requirements under 8 U.S.C. § 1182 and 8 C.F.R. § 212.5(e)(1) and (2).

---

[155] *Martinez v. Chestnut*, 2026 WL 121221, at *3.

[156] *Uzcategui v. Brooksby*, No. 4:26-CV-00020-DN-PK, 2026 WL 622751, at *10 (D. Utah Mar. 5, 2026) (citing *Martinez v. Chestnut*, 2026 WL 121221, at *3 (discussing the liberty interests associated with 1226(a) and release on parole)).

[157] *Zadvydas*, 533 U.S. at 690.

[158] *See Uzcategui v. Brooksby*, 2026 WL 622751, at *10 (citing *Martinez v. Chestnut*, 2026 WL 121221, at *3 (discussing the liberty interests associated with 1226(a) and release on parole)).

Mr. Diaz's prior release on parole created a reasonable expectation that he would be entitled to retain his liberty so long as he was not a flight risk, presented himself at any hearings for which he was given notice, and did not pose a danger to the community.[159] Respondents have not identified an official document in which a parole termination date was provided to Mr. Diaz, or that the termination of Mr. Diaz's parole was processed in accordance with 8 U.S.C. § 1182 or 8 C.F.R. § 212(e)(2). Mr. Diaz's liberty interests were violated by his May 19, 2026, arrest and subsequent detention without due process.

### 3.4   Respondents Have No Authority to Continue Detaining Mr. Diaz

Respondents may not continue Mr. Diaz's detention under 8 U.S.C. § 1225(b)(2). As previously discussed, Mr. Diaz's detention is governed by 8 U.S.C. § 1226(a), and termination of parole without notice requires that parole expired and that the termination met the statutory and regulatory requirements of 8 U.S.C. § 1182(d)(5) and 8 C.F.R. § 212.5(e)(2). Respondents only address 8 C.F.R. § 212.5(e)(1) and have not addressed how their processes in detaining Mr. Diaz have satisfied 8 U.S.C. § 1182 or 8 C.F.R. § 212.5(e)(2).[160]

Upon finding a constitutional violation, a district court may grant a writ of habeas corpus and "dispose of the matter as law and justice so require."[161] Release from detention is the "typical remedy" for "unlawful executive detention."[162]

Many orders in similar cases, involving parolees challenging their detention under § 1225(b)(2), require that a bond hearing be set in a short period of time with an automatic

---

[159] *Martinez v. Chestnut*, 2026 WL 121221, at *3; *see Zadvydas*, 533 U.S. at 690; *see also Morrissey,* 408 U.S. at 479 (discussing the expectation of liberty if the conditions of parole are followed).

[160] *See generally* Response at 5.

[161] 28 U.S.C. §§ 2241(a), 2243.

[162] *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

release if the hearing does not occur.[163] At this time, "a bond hearing would not remedy the core constitutional violation at issue here,"[164] Mr. Diaz's detention was unlawful from its inception because Respondents detained him under the wrong statute and without any notice or opportunity to be heard. "In this situation a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity [for] relief because the detention without adequate pre-deprivation procedures has already been carried out."[165]

Even if a bond hearing before an immigration judge were ordered, such relief would be futile. Currently, immigration officers and judges believe they are bound by erroneous administrative guidance and by an erroneous BIA decision to not offer release on bond.[166] On September 6, 2025, the BIA, concurring with the DHS position, held that "[b]ased on the plain language of section 235(b)(2)(A) of the INA, Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."[167]

Respondents have not satisfied the conditions for detention under 8 U.S.C. § 1182 or 8 C.F.R. § 212.5(e)(1) or (2).[168] The numerous habeas petitions filed daily since this administrative change confirm the ICE pattern of persisting in erroneous administrative guidance and feel entitled to ignore judicial orders.[169] As in those cases, Mr. Diaz received no notice of any change

---

[163] *See e.g.*, Mejia Moran v. Warden, California City Det. Ctr., No. 1:26-CV-01772-JLT-HBK (HC), 2026 WL 1284103, at *6 (E.D. Cal. May 11, 2026); *Hernandez Rodriguez v. Mullin, et. al.*, No. 2:26-CV-1125-KG-KRS, 2026 WL 1706910, at *5 (D.N.M. June 12, 2026); *Avila Zaldivar v. De Anda-Ybarra, et. al.* No. 1:26-CV-01210-KG-DLM, 2026 WL 1707595, at *6 (D.N.M. June 12, 2026); *RV Villegas Salazar v. Sheriff of Linn County, et. al.*, No. C26-98-LTS-MAR, 2026 WL 1651508, at *4 (N.D. Iowa June 8, 2026).

[164] *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 319.

[165] *Id.* at 319–20.

[166] *Barco Mercado v. Francis*, No. 25-cv-6582, at 31–32, 817 F.Supp.3d 487, 499-500 (quoting *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 216 (B.I.A. 2025).).

[167] *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 216.

[168] 8 U.S.C. § 1182(d)(5); 8 C.F.R. § 212.5(e).

[169] *See* cases cataloged in Kyle Cheney, *How ICE defies judges' orders to release detainees, step by step*, POLITICO, (February 10, 2026, 5:00 AM).

in circumstances that would require modification of his May 6, 2022 parole and subsequent Asylum Application.

Immediate release is the only appropriate remedy. Respondents are ordered to release Mr. Diaz immediately. Any attempt to re-detain Mr. Diaz must be supported by a valid statutory authority and any applicable procedural protection, including a showing of materially changed circumstances where required by law.[170]

## 4    ORDER

IT IS HEREBY ORDERED THAT Mr. Diaz's Petition for Writ of Habeas Corpus[171] is GRANTED.

IT IS FURTHER ORDERED:

1.       Respondents must immediately release Mr. Diaz during the pendency of his Asylum Application.

2.       Within 4 business hours of the issuance of this order, Respondents must file a report on the status of their compliance with this order to release Mr. Diaz.

3.       Respondents must reinstate all of Mr. Diaz's asylum-related hearing dates and file a copy of that notice with this court, unless Mr. Diaz agrees with the new June 29, 2026, date for his individual merits hearing on his Asylum Application.

4.       Respondents must not again attempt to use 8 U.S.C. § 1225 to detain Mr. Diaz. Any future detention must comply with the requirements of 8 U.S.C. § 1226(a) or applicable provisions of the asylum statutes.[172]

---

[170] *See* 8 C.F.R. § 1003.19(e); 8 U.S.C. § 1226(a).

[171] Petition for Writ of Habeas Corpus, docket no. 1, filed May 22, 2026.

[172] *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19(e).

5.      Any request by Mr. Diaz to recover fees or costs must be made by motion.

Signed June 25, 2026.

BY THE COURT

_____
David Nuffer
United States District Judge

30